## Aldrich and Wife *versus* Bailey *et al.*

1. McConnell contracted for land, to pay $2.50 per acre and improve; he took possession and improved; he died without paying any money except the cost of surveying, leaving a widow and children; as between him and his vendor there was no abandonment of the contract. An equitable estate descended to his widow and children.

2. The widow applied to the vendor for a new contract; it was signed by her, and her signature witnessed by vendor's attorney in fact; but not signed by vendor; she paid no purchase-money, but continued to live on the land until her death; she obtained no equity in the land.

3. Some of the heirs assigned to the widow their interest in the father's estate by writing not acknowledged nor recorded. The plaintiff, one of the heirs, afterwards obtained a deed of their interest from a number of McConnel's heirs, and then paid the whole purchase-money to the vendor who gave her a deed, which was duly recorded; she had no notice of the assignment to the widow. *Held*, that her title was best.

4. The widow divided the land and set off a portion to a son, who took possession of it; the widow gave him a quit-claim deed for it. This gave him no title as against the vendor.

5. The defendants claimed under a deed from the son and intervening deeds. One of the defendants holding the widow's imperfect contract, made payments on the purchase-money to an authorized agent, who afterwards learning plaintiff's claim, held the money, notified the defendant to receive it, and he declining, the deed was made to plaintiff. She acquired the legal title as her father's purchase.

6. The receipt of the money by the agent being by mistake, was not a ratification of the imperfect contract with the widow.

7. The vendor could not abrogate the contract with the father, and sell his land and improvements.

8. Inquiry. is a duty, where there is no actual or constructive notice; where it is omitted notice will be presumed.

9. Pennsylvania Salt Manufacturing Co. *v.* Neel, 4 P. F. Smith 9, adopted.

March 14th 1872.　Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ.　AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Tioga county*: No. 301, to January Term 1872.

This was an action of ejectment for a tract of land, containing 62 acres, in Sullivan township, commenced May 1st 1869, by Leander Aldrich and Hannah, his wife, in her right, against Robert B. Bailey, Burr R. Bailey, Frank Young, Cornish R. Mudge and Orrin T. Ames.

Both parties claimed under William Bingham's estate.

On the trial June 9th 1871, before White, P. J., the plaintiffs gave in evidence articles of agreement dated December 14th 1832, between Robert H. Rose, attorney in fact for the trustees of William Bingham's estate, and James McConnell.

The agreement was: " That on condition of an improvement and residence on it, the said James McConnell is to be entitled to a lot of land which was surveyed for him in the township of Sullivan, and county of Tioga, containing eighty-five acres and three-tenths of an acre, for which he is to pay to the said trustees two dollars and fifty cents per acre, in the following order, that is to

[Aldrich v. Bailey.]

say: one-eighth part on the 14th day of December, one thousand eight hundred and five, and one-eighth part, with interest annually afterwards until the whole be paid. Interest to commence at time appointed for the first instalment to be paid. And in case the said James McConnell shall abandon the said lot, or leave it untenanted for the term of six months at any time previous to the payment of the first instalment, then the trustees of the estate of the late William Bingham, or their agent or attorney, shall have power to sell and dispose of the said lot to any other person."

There was evidence by endorsement on the duplicate contract which remained in the hands of the trustees, that McConnell had paid $4 for survey; but not of any other payment by him; McConnell took possession of the land about the date of the contract and improved it; he died some years afterwards, leaving a widow, Sally McConnell, and nine children, Charles, Eli, Henry, Mahala, afterwards the wife of Christopher Green, Hannah (the plaintiff), James, Angeline, afterwards the wife of Frederick Fairman, Mary, afterwards the wife of Charles McArthur, and Justus. Five of these children, Charles, the oldest, Eli, Henry, Mahala and Hannah, were living with the father at his death; the mother and these children "remained on the place awhile," and all the children left but Charles and Hannah, who was married in July 1847; Charles went away and came back and stayed until after Hannah was married; she and her husband lived on the farm on different occasions for a year at a time, and finally came back and occupied the east part of the land till the trial, but had nothing to do with the west half (the part in dispute now in possession of the defendants), which was occupied by Charles, who lived there when the mother died; the land was divided near the middle; Charles and the mother had it measured off and established a division. Aldrich, the plaintiff, farmed the premises on the shares under the mother's direction, and lived with her until her death; the plaintiff never claimed a right to them till her death; L. Aldrich, plaintiff, testified that she went into possession of the east part under a will of the widow giving them that part.

The plaintiffs gave in evidence by R. C. Simpson, agent of the Bingham estate, that a paper, hereafter given, was found amongst the papers of that estate, and that the land mentioned in it is the same described in the agreement of December 14th 1832, between the Bingham estate and James McConnell; the paper was signed by Sally McConnell, but was not signed by any one representing the Bingham estate; it was witnessed as to Mrs. McConnell by E. B. Geroulds, a sub-agent of the Bingham trustees.

The paper was: "Articles of agreement made between Alexander Baring (and others), trustees of the estate of the late William Bingham, by their attorney, William Bingham Clymer, &c., of the one part, and Sally McConnell, of Sullivan township, county

[Aldrich *v.* Bailey.]

and state aforesaid, of the other part, witnesseth : That the said trustees agree to sell and convey unto the said party of the second part a lot of land, &c., containing eighty-five acres and three-tenths of an acre, provided the said party of the second part shall and does fulfil all the covenants hereinafter expressed for *him* to perform on his part, &c. The said party of the second part, &c., covenants, &c., to pay for the said land the sum of three hundred and sixteen dollars and fifty-five cents, with interest on the same, payable annually, in ten equal annual payments, &c. On the payment of principal and interest a deed of general warranty to be given.

" In case the party of second part shall abandon the said lot, or leave it untenanted for the term of six months at any time previous to the payment of the several instalments and interest agreed to be paid as aforesaid, or if he shall sell, cut or destroy, or suffer to be cut or destroyed, any timber, except where he may clear, fence or improve, or make use of any except for the purposes of the lot, for building on the premises, and for firewood, or if he shall sell, &c., this agreement without the consent of the said trustees or their agent or attorney first obtained in writing for that purpose, or if the interest is not annually paid, or the instalments of principal as they become due, it shall and may be lawful for the said trustees, &c., * * * without demand or entry, to make void this contract, and to hold and enjoy the said land clear of this agreement, and of all claim of anything they may have done under the same or at their option to enter judgment for the moneys due," &c. * * *

This paper was dated September 13th 1844.

The plaintiffs gave in evidence a deed dated January 10th 1869, from James McConnell (the son), F. Fairman and Angeline, his wife, Justus McConnell, Charles McConnell and Eli McConnell, heirs at law of James McConnell, deceased, to Hannah Aldrich, recorded March 2d 1869, for the land in controversy and other lands.

Deed dated March 1st 1869, from William B. Clymer, attorney of the trustees of the Bingham estate, to Hannah Aldrich, plaintiff, for the land mentioned in foregoing deed, and stated in the history of the case to be 69.6 acres ; this deed recited the agreement of December 14th 1832, with James McConnell, and also the foregoing paper, dated September 13th 1844. Mrs. Aldrich paid the purchase-money to the trustees. This deed was recorded, when did not appear, but from the page of the record-book stated in the paper-book, probably about the same time with that from the heirs.

This paper-book did not show anything as to this but the foregoing extracts.

The plaintiff gave evidence by Simpson that Robert Bailey, defendant, made two payments in 1865 or 1866, on the contract of September 1844 ; one payment was $100, the other $50.

[Aldrich v. Bailey.]

Bailey claimed to be interested in that contract and paid this money to be applied on the purchase-money; three or four years afterwards the trustees received notice of the plaintiffs' claim, and gave Bailey notice that he could have his money back; he did not take it and it remained in the safe at the agent's office.

The defendants under objection and exception gave in evidence the following release, which did not appear to be recorded, but was produced by a witness who testified that at the time of its execution Sally McConnell asked him to keep it.

"Be it remembered that we, the undersigned, for ourselves, our heirs, assigns, administrators, &c., do assign over to Sally McConnell and her heirs, viz., Charles McConnell, Eli McConnell, Henry McConnell, Mahala McConnell and Hannah McConnell, for and in consideration of the sum of $15, all our legal right, claim, interest, share of whatsoever name or nature in or on the real or personal estate of James McConnell, deceased, as for my equal right and share in said real or personal estate.

"Sullivan, March 4th 1842.

                                his
                    JAMES ⋈ McCONNELL,    [L. S.]
                        mark.
                                his
                    JUSTUS ⋈ McCONNELL,    [L. S.]
                        mark.
                    FREDERICK FAIRMAN,     [L. S.]
                    CHARLES McARTHUR,      [L. S.]
                    CHARLES McCONNELL,     [L. S.]

"In the presence of W. C. Ripley, John Fox, Thomas Jerril, paid witnesses.

"Endorsed.

"We, the undersigned, acknowledge the within sum of $15, by note.

Sullivan, March 4th 1842.

                                his
                    JAMES ⋈ McCONNELL.
                        mark.
                    FREDERICK F. FAIRMAN.
                    CHARLES McARTHUR."

Also, under objection and exception, a deed dated July 13th 1846, from Sally McConnell to Charles McConnell, conveying the land in dispute described as the west half of the tract. This deed was recorded after the above deeds of January 10th, and March 2d 1869, to Hannah Aldrich; the precise date of recording did not appear on the paper-book.

The defendants gave evidence also that in September 10th 1858 Charles McConnell conveyed part of the premises to Benjamin

[Aldrich *v.* Bailey.]

Aldrich; this deed was recorded September 17th 1858. He testified that he had the agreement of Sally McConnell in his possession when he bought from Charles, and within two years he gave it to Mrs. Aldrich. Also a deed without date, from B. Aldrich to Levi Aldrich, which was acknowledged November 13th 1860, and recorded September 13th 1866. Levi testified that he knew of the agreement of the trustees with Mrs. Aldrich, but had not seen it. Levi Aldrich, by deed without date, but acknowledged November 13th 1860, conveyed to Martin A. Cass; this deed was recorded May 5th 1869; Cass testified that he had heard of the contract but had not seen it; Cass by deed not dated but acknowledged, September 16th 1861, conveyed to D. M. Young; this deed was recorded December 9th 1862; Young died shortly afterwards, leaving a minor son, Frank, one of the defendants, whose guardian is Cornish Mudge. The other defendants all claim under D. M. Young, and occupy the land by authority of Mudge the guardian.

Plaintiffs requested the court to charge :—

1. That if the jury believe from the evidence that Sally McConnell, under whom defendants' claim, was left in possession of the land in controversy, at the time of the death of James McConnell, her husband, and remained in possession of it until she sold her interest in the same to Charles McConnell, and that his possession and those claiming under him down to the present defendants, was in pursuance of the interest or title so conveyed by Sally McConnell to Charles McConnell, such conveyance and possession will not affect plaintiff's right to recover except as to the title of Charles McConnell arising as heir to his father's estate, and from the paper signed by Justus and James McConnell and others, dated 4th March 1842, and purporting to convey the interest of those executing the same to Sally McConnell and certain of her heirs, among which is the said Charles McConnell and the plaintiffs in this suit.

2. That the possession and title of the widow Sally McConnell and Charles McConnell, and those claiming under them, as shown by the evidence, except so far as such title is derived from the heirs of James McConnell, deceased, is no defence in this suit.

3. That by the contract to her from the Bingham trustees, Sally McConnell acquired no greater title than she had before as widow of James McConnell, and if she had she would have held it as trustee for the plaintiff, Hannah Aldrich, and other heirs of James McConnell, and she could not convey it to Charles McConnell, or to others, so as to affect plaintiff's right to recover her interest in the suit.

4. That from all the evidence, plaintiffs are entitled to recover in this suit on her legal title given in evidence for all the land in controversy, subject to a conditional verdict, that if the jury be-

[Aldrich v. Bailey.]

lieve from the evidence that Frank Young is entitled to the undivided title of Charles McConnell, derived as heir from his father, James McConnell, as effected by the contract signed by him and others given in evidence, it must be upon condition of payment of a proper proportion of the purchase-money according to the contract to James McConnell, given in evidence.

The court, after recapitulating the evidence and referring to the deeds from Charles McConnell and his successors in title to Young, said : * * *

" These conveyances are all recorded. By them the equitable title of the land occupied by the defendants, included in plaintiff's writ, was vested in D. M. Young, unless the jury, from the evidence, believe that Benjamin Aldrich, Levi J. Aldrich, Martin A. Cass and D. M. Young had notice of the secret trust under which Mrs. McConnell held her contract with the Bingham trustees for the whole tract. The fact that her husband held a contract for the same land, executed in 1832, and that a duplicate of it was found in the office of the trustees after the payments had been made by one of the defendants, on the contract with Sally McConnell, in 1865 and 1867, is not notice. Proof of a knowledge of the existence of such a contract by the defendants would be. So would proof of a knowledge by said defendants of the fact that Mrs. McConnell's husband, in his lifetime, held possession of the land in controversy under such a contract." * * *

" Since the date of Charles McConnell's deed, July 13th 1846, the legal possession of the tract of land in dispute has been in Charles McConnell, Benjamin Aldrich, L. J. Aldrich, M. A. Cass, D. M. Young, and the parties now in possession. So far as the evidence shows, no person has attempted to interfere with their continuous possession, or made any claim to the right of possession as against them, until the bringing of this ejectment. This long-continued, peaceable possession is pretty strong evidence that the claimants under Charles McConnell did not know anything of any other contract with the Bingham trustees for this lot of land than Mrs. McConnell's contract, and unless the jury are satisfied from the evidence that they did have such knowledge, it cannot be inferred from the proof of the existence of such a contract, which has been introduced by the plaintiffs in this suit." * * *

Upon the points of the plaintiffs, the court charged :—

" These points are affirmed, if from the evidence the jury find that the claimants under Charles McConnell had notice of the trust upon which Mrs. McConnell held her contract with the Bingham trustees, but they are not applicable to the case, if the jury do not find that said claimants had some notice. If said claimants were bonâ fide purchasers of Charles McConnell's equity, having knowledge of the title under which he claimed, derived through the contract of the Bingham trustees with his mother, and without

[*Aldrich v.* Bailey.]

notice of the prior contract between said trustees and the father of said Charles McConnell, they cannot be affected by the trust which the law imposed on Mrs. McConnell when she made her contract with the Bingham trustees, and are entitled to hold the land claimed in plaintiff's writ discharged of such trust, subject only to the amount of purchase-money due said trustees on this portion of the land under the contract between said trustees and Mrs. McConnell, and this having been paid to said trustees by Hannah Aldrich, and this title of said trustees having been conveyed to her by deed of March 1st 1869, the plaintiffs, if not entitled to an absolute verdict, are entitled to a conditional one. If, therefore, under the facts given in evidence, the jury are of opinion that plaintiffs are entitled to an absolute verdict, they will render such verdict. But if the evidence does not authorize such findings, then they are instructed to return a verdict in favor of plaintiffs for the land described in their writ, subject to be released on payment of the purchase-money due on this portion of the land under the Bingham contract, and costs of suit, determining, also, the amount of purchase-money and interest due, and the time of payments of the same and costs."

The jury found for the plaintiffs the land described in their writ to be released on the payment of $414.11.

The plaintiffs took a writ of error and assigned for error,

The admission of the evidence objected to :

The refusal of plaintiffs' points.

The parts of the charge above given.

*H. C. Johns, F. W. Clark* and *C. H. Seymour,* for plaintiffs in error.

*J. B. Niles, M. F. Elliott, J. H. Bosard* and *H. Sherwood,* for defendants in error.

The opinion of the court was delivered, May 13th 1872, by

THOMPSON, C. J.—The legal title to the land in controversy, was in Hannah Aldrich, the wife of Leander Aldrich, by a regular conveyance from the trustees of the Bingham estate, dated March 1st 1869, and recorded April 1st, 1869. The conveyance was made, as it recites, in pursuance of a previous contract entered into between the trustees and James McConnell, her father, on the 14th of December 1832, for the land. The deed also recites, it is said, a contract with Sally McConnell, her mother, in 1844, by an agent of the trustees for the same land, but what the nature of the recital is, we know not, for the deed is not on the paper-books or record, as it ought to have been.

It appears by the testimony, and it was undisputed, that James McConnell entered into the possession of the land contracted for,

[Aldrich v. Bailey.]

shortly after the date of the contract, and fully performed, in his lifetime, one of the conditions of the contract, which is set forth as follows: " That on condition of an improvement and residence on it, the said James McConnell is to be entitled to a lot of land which was surveyed for him in the township of Sullivan, and county of Tioga, containing 85 3-10 acres, for which he is to pay to the said trustees, two dollars and fifty cents per acre, in the following order, that is to say: one-eighth part on the 14th day of December 1835, and one-eighth part with interest annually afterwards until the whole is paid," &c.  Residence and settlement were made part, and were thought to be an important part, of the consideration for the contract at that time, although the money consideration was necessary to be paid, in order to secure a conveyance. There was also a small payment made in money by McConnell, perhaps not more than equal to the surveying fees.  As between the trustees and him there was not the smallest act of abandonment of the contract during his lifetime; when, therefore, he died, some years afterwards, an equitable estate in the land descended to his children, and this their mother could neither sell, surrender nor give away.

In May 1844, it would appear that Sally McConnell, the widow, applied to the trustees of the Bingham estate, for a new contract for the land, and she signed a contract for it.  But there the contract ended. The trustees never signed it, nor did she pay any portion of the purchase-money at the time, or afterwards, although she continued to live on the place until she died, some eight or ten years afterwards.  The facts given in evidence are barren of dates, not in this instance alone, but in other essential particulars in this case.  From this state of the facts, it is apparent that Sally McConnell acquired no equity in the land purchased and improved by her husband, under this imperfect contract.  If it be thought that she acquired an equity from a portion of the heirs, by the informal assignment to her of their interest in the real and personal estate of their father in 1842, for the sum of $15, not acknowledged and recorded, it would not avail the defendants, for Mrs. Aldrich has their subsequent conveyance, duly recorded, for their interest in the land in question.  Being first on record, and without proof of actual notice, her title to the land as derived from the heirs, would be the best.  This is the rule of the recording acts beyond doubt: Penna. Salt Manufacturing Co. v. Neel, 4 P. F. Smith 9; and authorities therein cited.

It seems that after the death of James McConnell, and perhaps after the imperfect contract of Sally McConnell, with the trustees of the Bingham estate, a line was run through the land purchased by James McConnell, and a portion set off to Charles McConnell, which I infer is the land in controversy, but about which I am not certain, the præcipe being indefinite as to whether the entire

[Aldrich *v.* Bailey.]

piece sold to James McConnell is included within the boundaries given or not; but I would presume it was not. Charles McConnell took possession of this portion of the land after Sally, his mother, gave him a quit-claim deed for it, in 1846. If she had no title to the land, this deed gave him none, and certainly this must be held to be the case so far as her contract with the trustees is concerned. It was never executed by them, as an inspection of the paper shows, but as is also distinctly proved by Simpson & Gerould, the agents; and of course gave her no equity.

The title of the defendants is derived through a quit-claim deed from Charles McConnell to Benjamin Aldrich, and by sundry quit-claim deeds to them. Of course, as already said, these deeds amounted to nothing, excepting to estop the parties from ever claiming against them, if at the time they had any title. It appears that in 1865 or 1866, Robert B. Bailey, having a copy of the deficient article between Mrs. McConnell and the trustees, made a payment to the agent of the trustees of $100, and afterwards of $50, both payments, says the witness, Simpson, the agent, "remain in the safe in our office. * * * Mr. Bailey claimed to be interested in the Sally McConnell contract, or in the land which it represented; paid it to apply on the purchase-money of that land." Afterwards, on receiving notice of Mrs. Aldrich's claim under the James McConnell contract, the agent testifies, he notified Mr. Bailey to come and receive his money back. But this he refused to do. The deed for the land in question and more, was then made to Mrs. Aldrich, she holding the conveyance of the heirs, and paying up the original purchase-money and interest. Thus she acquired a legal title to the property in question, as part of the original purchase by her father.

The receipt of the purchase-money on account of the Sally McConnell contract, if by mistake, as was testified to by the agent, was not a ratification by the trustees of the defective contract. Ratification is an intelligent act, and in law, I know of no case where it results from a mistake. But if this were less true than it is, the trustees have no authority to abrogate the James McConnell contract and sell his equity in the land, together with valuable improvements put on it by him. Mrs. McConnell's contract was for the whole land, and to this Bailey's payment applied, if it applied at all, and we think from the case as disclosed, it amounted to nothing to raise an equity in favor of the defendants. As there were no deeds on record, it was the duty of the defendants before embarking in an undertaking to acquire title to property sold to another, to inquire of the possessor, how it stood, and where it was? Any inquiry of Charles McConnell, also, would have disclosed who Sally McConnell was; that she was the widow of James McConnell, and that she could not acquire title for herself to property which had descended to his heirs. So an inquiry of the per-

[Aldrich *v.* Bailey.]

sons in possession would have disclosed that James McConnell died seised of an equitable title to the lands and in possession. Inquiry is always a duty where notice is not actual or constructive, and where it is a duty and is omitted, the party will be regarded as having notice; that is to say he will be considered as one who intends to take the risk of the *status* of things. We think that was the condition of the defendants, at least of the holder of the title under which the defence was made in the case, and therefore, we are of opinion that the learned judge should have, in the aspect in which the case stood, affirmed the plaintiffs' fourth point, which was, "that from all the evidence in this case, the plaintiffs are entitled to recover in this suit on their legal title given in evidence, for all the land in controversy, subject to a conditional verdict; that if the jury believe from the evidence that F. Young is entitled to the undivided title of Charles McConnell, derived as heir from his father, James McConnell, as affected by the contract signed by him and others given in evidence, it must be upon condition of payment of a proper proportion of the purchase-money, according to the contract to James McConnell, given in evidence."

The conditional verdict rendered in the case, was widely different, as we understand it. It was for all the land embraced in the writ, some 62 acres, upon the basis that the title, or rather quit-claim, of his mother, vested Charles with title to all the west half, a portion of the land originally of James McConnell, his father. This we think under the testimony was not the case.

The first, second and third points of the plaintiffs, are substantially embraced by the fourth, otherwise they should have been answered also in the affirmative.

As to the admissions of testimony in the bills of exceptions, Nos. 1 and 2, they were in our view of the case harmless, and it was perhaps, at the time of their offer and admission, well enough to admit them, to enable the defendants to raise their theory of the case, but to give effect to them, we think, for the reasons already stated, was error. The defendants did not rely on Charles McConnell's deed for title as against the plaintiffs, any further than as a transfer of his mother's title under the supposed contract with the trustees of the Bingham estate. But as that amounted to nothing, his deed had no effect.

There is a great want of clearness in the presentation of this case, both on account of the absence of dates, and of deeds which must have been given in evidence. If unhappily this case ever comes to this court again, we trust it will be in a more transparent form than it has appeared at this time.

Judgment reversed, and *venire de novo* awarded.